**GLENCORE GRAIN ROTTERDAM B.V., Plaintiff–Appellant,**

v.

**SHIVNATH RAI HARNARAIN CO., Defendant–Appellee.**

No. 01–15539.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 17, 2002.

Filed March 26, 2002.

Michael P. O'Bresly, (Argued & Briefed), Lillick & Charles LLP, San Francisco, CA, for the plaintiff-appellant.

Walter T. Johnson (Briefed), Nixon & Peabody LLP, San Francisco, CA, for the plaintiff-appellant.

William W. Haskell, (Argued), Haskell & Goodman LLP, Hayward, CA, for the defendant-appellee.

Ann Judge (Briefed), Haskell & Goodman LLP, Hayward, CA, for the defendant-appellee.

Before: GOODWIN, SNEED and TROTT, Circuit Judges.

TROTT, Circuit Judge.

Glencore Grain Rotterdam B.V. ("Glencore Grain") filed an application in the district court under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") for an order confirming its arbitration award against Shivnath Rai Harnarain Company ("Shivnath Rai"). On Shivnath Rai's motion, the district court dismissed Glencore Grain's application for lack of personal jurisdiction.

We have jurisdiction over Glencore Grain's appeal pursuant to 28 U.S.C. § 1291. We hold that the Convention does not eliminate the due process requirement that a federal court have jurisdiction over a defendant's person or property in a suit to confirm a previously issued arbitration award. Because Glencore Grain fails (1) to identify any property owned by Shivnath Rai in the forum, or (2) to allege facts that support a finding of personal jurisdiction, we affirm the district court's dismissal of the complaint.

## BACKGROUND

This case arises out of a series of eleven contracts under which Glencore Grain, a Netherlands corporation with its principal place of business in Rotterdam, agreed to purchase approximately 300,000 tons of rice from Shivnath Rai, a manufacturer and exporter of rice incorporated in India with its principal place of business in New Delhi. The contracts called for the delivery of rice at the Port of Kandla, India. Among the rights and responsibilities set forth in each contract were the following arbitration and choice of law clauses:

11.—Any dispute arising on this Contract shall be referred for settlement to the Arbitration by two Members of [the London Rice Brokers'] Association's Panel of Arbitrators or their Umpire, being also a member of this Panel. Each party to appoint one Arbitrator and having the right to reject one nominee.... The parties to the arbitration shall have the right of appealing against any Award (except on questions of law) within 30 days from the date of Award to the London Rice Brokers' Association, whose decision shall be final. Any payments arising out of the Award are due to be made within 30 days of the date thereof.

. . . .

14.—Domicile.—The Contract shall be deemed to have been made in England and ... shall be governed in all respects by English Law. Any dispute arising out of or in connection therewith shall be submitted to arbitration in accordance with the Rules of the London Rice Brokers' Association.

A dispute arose between the parties concerning the delivery of rice and was submitted to arbitration before the London Rice Brokers' Association ("LRBA"). In its written decision from July 1997, the LRBA ruled in favor of Glencore Grain, awarding it roughly $6.5 million; including interest, the award exceeded $7 million. Shivnath Rai did not challenge the decision in England, where the award became final and remains enforceable, nor did Shivnath Rai pay up.

In March 1998, Glencore Grain filed suit in the High Court of Delhi at New Delhi,

India to enforce the unpaid arbitration award. Shivnath Rai objected to the enforcement of the award on several grounds, including its failure to consent to the arbitration provisions in the underlying contracts and the arbitrators' allotment of insufficient time to defend its case on the merits. Glencore Grain's enforcement action remains pending in the High Court of Delhi.

In July 2000, Glencore Grain filed an application in the federal district court for the Northern District of California, seeking confirmation of the arbitral award under the Convention, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. 6997, 330 U.N.T.S. 38, reprinted following 9 U.S.C.A. § 201 (West 1999). Shivnath Rai filed a motion to dismiss on six different grounds, including the absence of personal jurisdiction.[1]

In its motion opposing dismissal, Glencore Grain submitted evidence of Shivnath Rai's minimum-contacts with California and with the United States as a whole to justify the exercise of personal jurisdiction. Glencore Grain provided evidence of the following shipments of rice by Shivnath Rai: a 1987 shipment into the Port of Los Angeles; seven shipments through East Coast ports from 1993 to 1995; and fifteen shipments into the Port of San Francisco from March 1999 to March 2000. In addition, Glencore Grain submitted documents indicating that Alok Mohan, President of Asian Brands, Inc., located in Union City, California, served as Shivnath Rai's sales agent for its rice sales throughout the United States. Glencore Grain contended that these contacts supported the exercise of either specific or general jurisdiction over Shivnath Rai.

Unswayed, the district court dismissed the action for lack of personal jurisdiction. In rejecting the general jurisdiction argument, the district court reasoned: "[p]etitioner has not asserted that Respondent conducts any business in the [U.S.] except through this sales agent [*i.e.*, Asian Brands, Inc.]." Accordingly, the district court found insufficient contacts to exercise general jurisdiction. In addition, the district court refused to exercise specific jurisdiction because "[Glencore Grain] nowhere asserts that the cause of action arises out of or relates to [Shivnath Rai's] activities within the forum." Lacking personal jurisdiction over Shivnath Rai, the district court dismissed Glencore Grain's application to confirm its arbitral award.

This timely appeal followed.

## DISCUSSION

### I Standard of Review

 We review a dismissal for lack of jurisdiction de novo. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). Because the district court dismissed the case without holding an evidentiary hearing, Glencore Grain need only make a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal. *See id.* We accept as true Glencore Grain's uncontroverted allegations, and resolve in its favor factual conflicts contained in the parties' filings. *See AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996).

### II The Convention Provides Subject Matter Jurisdiction Over Glencore Grain's Action To Enforce Its Arbitration Award

 In 1970 Congress ratified the Convention, a multilateral treaty providing for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the rec-

---

1. The other bases for dismissal are not at issue on appeal.

ognition and enforcement of such awards are sought." Convention, art. I(1), 21 U.S.T. 2517. Congress implemented the Convention by passing Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208,[2] which provides that

> [a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203.

> The FAA further provides:
> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

The Convention governs this action to confirm Glencore Grain's arbitration award because the award was obtained in the United Kingdom (London) within three years of Glencore Grain's suit in district court. *See* Restatement (Third) of Foreign Relations Law § 487 cmt. b (1987) ("[T]he critical element is the place of the award: if that place is in the territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration.").[3] Thus the district court had subject matter jurisdiction over Glencore Grain's application.

## III The Convention Does Not Abrogate the Due Process Requirement That Jurisdiction Exist Over the Defendant's Person or Property

■ Before considering Glencore Grain's arguments for the existence of jurisdiction over Shivnath Rai, we feel it necessary to address briefly Glencore Grain's intimation that the FAA contemplates reduced jurisdictional requirements over a defendant in suits to confirm arbitral awards. For the reasons stated below, we find this position without merit.

The Convention and its implementing legislation have a pro-enforcement bias, a policy long-recognized by the Supreme Court:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The mandatory language of the Convention itself and of the FAA reflects this partiality and leaves the district courts with "little discretion." *Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir.1992). Article III of the Convention is illustrative: "Each Contracting State *shall recognize*

---

**2.** References in this opinion to the FAA refer to sections 201–208, unless otherwise noted. We use "FAA" and "implementing legislation" interchangeably.

**3.** The United Kingdom is a signatory to the Convention. *See* 9 U.S.C.A. § 201 note (West 1999).

*arbitral awards as binding* " without creating conditions or procedures more onerous than those applied to domestic arbitration awards. 21 U.S.T. 2517 (emphasis added). Similarly, the FAA instructs that a federal court *"shall confirm the award* unless it finds one of the grounds for refusal . . . of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C. § 207 (emphasis added).

In light of this mandate to confirm awards, Glencore Grain seems to find significance in what the Convention and the FAA do *not* say: (1) neither the Convention nor its implementing legislation expressly requires personal jurisdiction over the party against whom confirmation is sought; and (2) lack of personal jurisdiction over the defendant in the state where enforcement is sought is not among the Convention's seven defenses to recognition and enforcement of a foreign arbitration award. *See* Convention, art. V, 21 U.S.T. 2517. We do not.

■ It is a bedrock principle of civil procedure and constitutional law that a "statute cannot grant personal jurisdiction where the Constitution forbids it." *Gilson v. Republic of Ir.*, 682 F.2d 1022, 1028 (D.C.Cir.1982). This precept reflects the idea that a district court must possess authority over the subject matter and over the parties, distinct powers that flow from distinct areas of the Constitution. Though Article III, Section 2, Clause 1 of the Constitution delineates the "character of the controversies over which federal judicial authority may extend," the lower federal courts rely on Congress to confer this authority through statutory grants of jurisdiction. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). "Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement." *Id.* at 702, 102 S.Ct. 2099.

■ The personal jurisdiction requirement, by contrast, "flows . . . from the Due Process Clause . . . . [and] represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Id.* District courts determine the existence *vel non* of personal jurisdiction not by reference to statutory imprimatur, but by inquiring whether maintenance of a suit against the defendant comports with the constitutional notions of due process as outlined in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Thus, it is not significant in the least that the legislation implementing the Convention lacks language requiring personal jurisdiction over the litigants. We hold that neither the Convention nor its implementing legislation removed the district courts' obligation to find jurisdiction over the defendant in suits to confirm arbitration awards.

Perhaps because our holding is so unexceptional, we have uncovered relatively little authority squarely addressing the issue. The little authority that exists unequivocally endorses our position. First, we note the following language from the Restatement: "An arbitral award is ordinarily enforced by confirmation in a judgment. . . . As in respect to judgments . . . *an action to enforce a foreign arbitral award requires jurisdiction over the award debtor or his property.*" Restatement (Third) of Foreign Relations Law § 487 cmt. c (1987) (emphasis added).

Second, we find uniform support from the few courts that have expressly considered the jurisdictional requirements under the Convention. In *Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 622 F.Supp. 25 (S.D.N.Y.1985), a Liberian plaintiff brought suit under the Convention to confirm its London arbitration award against a Saudi defendant. Addressing

the issue of personal jurisdiction, the court concluded:

> [A]s to the [FAA] . . ., it authorizes the court to hear a new category of action not previously within its subject matter jurisdiction. It does not, however, give the court power over all persons throughout the world who have entered into an arbitration agreement covered by the Convention. ; Some basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the court's power.

*Id.* at 27.

Two recent decisions expressly adopted *Bulk Shipping's* reasoning. *See Italtrade Int'l USA, L.L.C. v. Sri Lanka Cement Corp.,* No. CIV. A. 00–2458, 2002 WL 59399, at *2, 2002 U.S. Dist. LEXIS 1322, at *5 (E.D.La. Jan. 15, 2002); *Dardana Ltd. v. Yuganskneftegaz,* No. 00 Civ. 4633, 2001 WL 1131987, at *1, 2001 U.S. Dist. LEXIS 16078, at *4 (S.D.N.Y. Sept. 24, 2001).[4] A third, *CME Media Enters. B.V. v. Zelezny,* No. 01 Civ. 1733, 2001 WL 1035138, 2001 U.S. Dist. LEXIS 13888 (S.D.N.Y. Sept. 10, 2001), followed *Bulk Shipping* in spirit, if not in letter. In *Zelezny,* CME petitioned the court to confirm a $23 million arbitration award obtained in Amsterdam against a Czech citizen, Zelezny. CME argued that the court had jurisdiction to confirm its award because Zelezny had assets—bank account funds—in the forum. Zelezny countered that the court could not hear the case because the court lacked personal jurisdiction; the bank account, Zelezny argued, could not suffice. *Zelezny,* 2001 WL 1035138, at *3, 2001 U.S. Dist. LEXIS 13888, at *7–8. The court disagreed. Noting that "[a] court has authority to adjudicate a case based on its power over either the defendant's person or the defendant's property," the court held it could exercise *quasi in rem* jurisdiction over the property and, thus, had jurisdiction to confirm the award. *Id.* at *3, 2001 U.S. Dist. LEXIS 13888, at *8.[5]

■ A final consideration counsels our position. Interpreting the FAA to dispense with the jurisdictional requirements of Due Process in actions to confirm arbitral awards would raise clear questions concerning the constitutionality of the statutes. We avoid such constitutionally questionable constructions whenever fairly possible. *United States v. Buckland,* 277 F.3d 1173, 1179 (9th Cir.2002) (en banc).

Of course, the positions espoused in the preceding district court opinions and Restatement (Third) do not bind this court. Nevertheless, we find them well-reasoned and persuasive. Thus, we hold that in suits to confirm a foreign arbitral award under the Convention, due process requires that the district court have jurisdiction over the defendant against whom enforcement is sought or his property.

---

**4.** Though the Second Circuit has not expressly adopted the *Bulk Shipping* position, we read at least one of its decisions to endorse today's holding. *See Seetransport Wiking Trader v. Navimpex Centrala Navala,* 989 F.2d 572, 580 (2d Cir.1993) (requiring personal jurisdiction in suit under the Convention to confirm arbitral award against foreign sovereign).

**5.** We cite *Zelezny* for the proposition that in a suit under the Convention to confirm an arbitration award, a court may base its jurisdiction over the defendant's person or, where appropriate, his property. The *Zelezny* court went on to hold that it could only confirm CME's award up to the value of Zelezny's bank account—the basis of the court's jurisdiction. This part of the court's holding has no bearing on the case before us, and we offer no opinion as to the correctness of this determination.

## IV The District Court Lacked Jurisdiction Over Shivnath Rai

### A. Jurisdiction Under Rule 4(k)(1)(A) and the California Long–Arm: Shivnath Rai Lacks Minimum Contacts With California

When, as here, subject matter jurisdiction is premised on a federal question, the exercise of personal jurisdiction over a non-resident defendant must be authorized by a rule or statute and consonant with the constitutional principles of due process. *Myers*, 238 F.3d at 1072. Because there is no applicable federal statute governing personal jurisdiction, our starting point is California's long-arm statute. *See* Fed. R.Civ.P. 4(k)(1)(A); *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir.2001) (per curiam). California's long-arm permits the exercise of jurisdiction to the limits of due process. *See* Cal.Civ.Proc.Code § 410.10; *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1317 n. 2 (9th Cir.1998). Thus, our analysis of personal jurisdiction under California's long-arm and the Constitution collapse into one, and we consider only whether the exercise of jurisdiction over Shivnath Rai comports with due process.

Constitutional due process is satisfied when a non-resident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Depending on the nature of a foreign defendant's contacts with the forum, a federal court may obtain either specific or general jurisdiction over him. A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum. *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Whether dealing with specific or general jurisdiction, the touchstone remains "purposeful availment." By requiring that "contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," the Constitution ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

### i Specific Jurisdiction Is Not Proper Over Shivnath Rai

Our Circuit applies a three-part test to evaluate the propriety of exercising specific jurisdiction: (1) whether the defendant purposefully availed himself of the privileges of conducting activities in the forum, (2) whether the claim arises out of or results from the defendant's forum-related activities, and (3) whether the exercise of jurisdiction is reasonable. *Myers*, 238 F.3d at 1072. Glencore Grain's suit fails to clear the second hurdle.

We apply a "but for" test to assess whether Glencore Grain's claims "arise out of" Shivnath Rai's forum conduct: Glencore Grain must show that it would not have been injured "but for" Shivnath Rai's contacts with California. *See Unocal*, 248 F.3d at 924. The contracts giving rise to

this dispute were negotiated abroad, involved foreign companies, and required performance (*i.e.*, delivery of rice) in India. In short, Glencore Grain's claim does not arise out of conduct directed at or related to California. Thus, due process forbids the exercise of specific jurisdiction.

### ii General Jurisdiction Is Not Proper Over Shivnath Rai

■ We consider, next, the nature of Shivnath Rai's contacts to see whether they constitute the kind of continuous and systematic general business contacts that "approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). Such contacts were found to exist in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448, 72 S.Ct. 413, 96 L.Ed. 485 (1952); the Supreme Court has summarized the circumstances that permitted the exercise of general jurisdiction over the defendant foreign corporation in that case:

> During the Japanese occupation of the Philippine Islands, the president and general manager of a Philippine mining corporation maintained an office in Ohio from which he conducted activities on behalf of the company. He kept company files and held directors' meetings in the office, carried on correspondence relating to the business, distributed salary checks drawn on two active Ohio bank accounts, engaged an Ohio bank to act as transfer agent, and supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines. In short, the foreign corporation, through its president, "[had] been carrying on in Ohio a continuous and system-

atic, but limited, part of its general business," ....

*Helicopteros*, 466 U.S. at 414–15, 104 S.Ct. 1868 (quoting *Perkins*, 342 U.S. at 438, 72 S.Ct. 413).

By contrast, the Court did not find general jurisdiction over the foreign defendant in *Helicopteros*. At issue there was whether Helicol, a Colombian corporation based in Bogota, was subject to suit in Texas for deaths caused by the crash of its helicopter in Peru. The most significant contacts accrued over a seven year period: "[Helicol] purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4 million from Bell Helicopter Company in [Texas]." *Id.* at 411, 104 S.Ct. 1868. In addition, Helicol sent its pilots and maintenance personnel to Texas for training and technical consultation. *Id.* The Court found these contacts insufficient to support general jurisdiction: "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 418, 104 S.Ct. 1868.

■ Here, Shivnath Rai's contacts with California amount to the presence of an independently employed sales agent who imports and distributes Shivnath Rai's rice, a 1987 rice shipment into Los Angeles, and the fifteen San Francisco shipments from March 1999 to March 2000.[6] There is no evidence that Shivnath Rai owns property, keeps bank accounts, has employees, solicits business, or has designated an agent for service of process in California. Though Shivnath Rai has exported considerable rice through the Port

---

**6.** The record indicates that the Food and Drug Administration ("FDA") determined that six of the fifteen rice shipments, though claimed by Shivnath Rai as its own, were packaged by a different company. Whether the number of shipments is nine or fifteen does not affect the outcome of our jurisdiction analysis.

of San Francisco, these contacts seem to "constitute doing business *with* California, but do not constitute doing business *in* California. This is because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters,* 223 F.3d at 1086 (citation omitted). Put another way, while it is clear that Shivnath Rai has stepped through the door, there is no indication that it has sat down and made itself at home.

The idea of the foreign defendant making himself at home in the forum was critical in *Perkins,* where the foreign defendant had set up most aspects of its operations in the forum state. Shivnath Rai's San Francisco shipments pale in comparison to the transplanted business operations in *Perkins.* Further, Shivnath Rai's contacts do not even measure up to those deemed inadequate in *Helicopteros:* not only do Shivnath Rai's contacts lack the duration of Helicol's (one year vs. seven years), but no employee of Shivnath Rai was alleged to have ever stepped foot in California. *Cf. Helicopteros,* 466 U.S. at 411, 104 S.Ct. 1868 (discussing the training of defendant's pilots, management and maintenance personnel in the forum). Granted, Shivnath Rai's sales agent is located in the forum, but it is uncontested that this sales agent, Alok Mohan of Asian Brands, is neither employed by Shivnath Rai nor at liberty to contract on its behalf. Asian Brands's presence, then, does not appreciably magnify Shivnath Rai's California presence under our general jurisdiction analysis. In sum, Shivnath Rai's contacts with California make it, at most, a visitor to the forum; the "physical presence" necessary for an assertion of general jurisdiction requires more. Accordingly, the district court properly refused to exercise general jurisdiction.

### iii The Exercise of Personal Jurisdiction Over Shivnath Rai Would Be Unreasonable

Even assuming that Shivnath Rai had the requisite minimum contacts to support the exercise of general jurisdiction, this Court must analyze whether the assertion of jurisdiction is reasonable. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Unocal,* 248 F.3d at 925 (citing *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 851 (9th Cir. 1993)).

To assess the reasonableness of exercising jurisdiction, we consider seven factors identified by the Supreme Court in *Burger King:*

(1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum.

*See Myers,* 238 F.3d at 1075.

Even a cursory glance at the factors reveals the unreasonableness of exercising jurisdiction in this case.

(1) Assuming that Shivnath Rai's regular shipments into San Francisco constituted "systematic and continuous" contacts, the extent of its *purposeful interjection* is slight for the reasons given in the previous section.

(2) The burden on Shivnath Rai to defend suit in California appears great, given that it is incorporated in India, owns no

property in the forum, and has no employees or persons authorized to act on its behalf there. Moreover, its potential witnesses and evidence are likely half a world away.

(3) As for the potential conflict with India's sovereignty, this Court has noted: "Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Leonis,* 1 F.3d at 852.

(4) The underlying dispute involves foreign parties concerning a contract that was executed in England, that called for rice to be delivered in India, and which provided for English arbitration in the event of a dispute. California's interest in adjudicating this suit appears slight.

(5) The "most efficient resolution" factor "involves a comparison of alternative forums." *Id.* Two alternative forums are readily apparent: (1) India, where a parallel lawsuit is currently pending, and (2) England, where the arbitration award was rendered, is final, and may be sued upon.

(6) Given the foregoing analysis, it is unsurprising that Glencore Grain's interests would seem better served by bringing the action in a different forum. Glencore Grain has provided no evidence that California is particularly convenient for it, a Dutch company. Absent any evidence of assets in the California forum against which Glencore Grain could enforce its award, we find Glencore Grain's interest in "convenient and effective" relief is frustrated, not promoted, by bringing suit there.

(7) As noted above, an alternative forum exists in India where proceedings concerning this same arbitration award are currently pending. Moreover, English courts are also available.

The reasonableness calculus clearly compels the conclusion that the exercise of personal jurisdiction over Shivnath Rai would be unreasonable.

**B. Jurisdiction Under Rule 4(k)(2) and the Federal Long Arm: Shivnath Rai Lacks Minimum Contacts With the United States**

Glencore Grain argues on appeal that Federal Rule of Civil Procedure 4(k)(2), which under certain circumstances authorizes jurisdiction based on a defendant's national contacts, provides for personal jurisdiction over Shivnath Rai. We disagree.

Rule 4(k)(2) provides:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

The rule operates when three conditions are met: (1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of *any* state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. Thus, the rule provides for what amounts to a federal long-arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis. *See* Fed. R.Civ.P. 4 advisory committee's note 1993 Amendments; *United States v. Swiss Am. Bank, Ltd.,* 191 F.3d 30, 36 (1st Cir.1999); *cf. Go–Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406, 1416 (9th Cir.1989).

Glencore Grain satisfies the first condition by bringing its enforcement action

under 9 U.S.C. §§ 201–208. On this undeveloped record, we cannot assess the second condition—whether Shivnath Rai is subject to personal jurisdiction in any state court. Even assuming that it is not, Shivnath Rai's national contacts do not support the exercise of jurisdiction. Apart from the California contacts discussed above, Glencore Grain identifies Shivnath Rai's seven East Coast shipments from 1993–1995. Yet, these East Coast shipments are few in number and old in vintage, and add little, if anything, to the jurisdictional analysis. Essentially we are left to consider whether Shivnath Rai's California contacts can support the exercise of general jurisdiction, this time on a national scale. The answer remains no.[7]

In the absence of personal jurisdiction, Glencore Grain can avoid dismissal of its suit only by showing that the court could base its jurisdiction on property owned by Shivnath Rai and located in the forum. It is to this last issue we now turn.

## C. Glencore Grain Fails to Identify Property That Could Serve As the Basis for Jurisdiction Over Shivnath Rai

■ Glencore Grain asserts: "Proceedings to enforce a foreign arbitration award *against assets located in this jurisdiction* should not require the same showing of personal jurisdiction to satisfy due process as would a complaint seeking determination of the merits of the controversy, because the merits have already been determined." (emphasis added). While we do not disagree with this general contention, we question its applicability to this case.

Considerable authority supports Glencore Grain's position that it can enforce the award against Shivnath Rai's property in the forum even if that property has no relationship to the underlying controversy between the parties.[8] In *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Supreme Court endorsed the position urged by Glencore Grain:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Shaffer*, 433 U.S. at 210 n. 36, 97 S.Ct. 2569; *see also* Restatement (Third) of Foreign Relations Law § 487 reporter's note 7 (1987) ("The [ ] Convention does not refer to the subject, but it is clear that attachment and comparable provisional remedies for enforcement of a foreign arbitral award, if available in the enforcing state, are compatible with the Convention."); *cf. Carolina Power & Light Co. v. Uranex*, 451 F.Supp. 1044, 1049 (N.D.Cal.1977) (holding plaintiff may attach defendant's California property as security pending arbitration between the parties in New York).

Nevertheless, as even Shivnath Rai seems to concede by the very terms of its argument, the *sine qua non* of basing jurisdiction on a defendant's assets in the forum is the identification of some asset.

---

**7.** Even if this Court found sufficient national contacts to support the assertion of personal jurisdiction, a reasonableness analysis would, for the reasons stated in Section IV(A)(iii), compel a contrary result.

**8.** Tormented souls of first-year civil procedure will recognize this strain of jurisdiction as *quasi in rem* type II, where "the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him." *Hanson*, 357 U.S. at 246 n. 12, 78 S.Ct. 1228.

Glencore Grain fails to identify any property owned by Shivnath Rai in the forum against which Glencore Grain could attempt to enforce its award. Indeed, the best Glencore Grain can say is that it believes in good faith that Shivnath Rai has or will have assets located in the forum. This is simply not enough. Given the record before us, we must reject Glencore Grain's argument for jurisdiction based on property in the forum.[9]

## CONCLUSION

We arrive at what we deem an unremarkable holding: the Convention and the FAA authorize the exercise of subject matter jurisdiction but not personal jurisdiction. Personal jurisdiction must be based on a defendant's person or property. Glencore Grain failed to identify any property of or conduct by Shivnath Rai that might serve as the basis for the court's jurisdiction over it; even if Shivnath Rai's conduct supported the exercise of jurisdiction, that exercise would be unreasonable given the circumstances of this case. Accordingly, the district court properly dismissed this action.

**AFFIRMED.**

9. Of course, Glencore Grain might press this position in the future if it discovers property in the forum owned by Shivnath Rai.