07-1815-cv
Frontera Resources Azerbaijan Corporation v. State Oil Company of the Azerbaijan Republic

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008
(Argued: October 27, 2008     Decided: September 28, 2009)
Docket No. 07-1815-cv

---------------------------------------------------x

FRONTERA RESOURCES AZERBAIJAN CORPORATION,

Petitioner-Appellant,

-- v. --

STATE OIL COMPANY OF THE AZERBAIJAN REPUBLIC,

Respondent-Appellee.

---------------------------------------------------x

B e f o r e :  WALKER, PARKER, and RAGGI, Circuit Judges.

Petitioner Frontera Resources Azerbaijan Corporation appeals from the dismissal of its petition to confirm a foreign arbitral award against Respondent State Oil Company of the Azerbaijan Republic ("SOCAR") for lack of personal jurisdiction.  We hold that the district court correctly required jurisdiction over either SOCAR or SOCAR's property.  We find, however, that the district court erred by holding that foreign states and their agents are entitled to rights under the Due Process Clause.  Accordingly, we overrule our holding to the contrary in Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300 (2d Cir. 1981), and remand for the district court to reconsider its jurisdictional analysis.

VACATED and REMANDED.

JAMES E. BERGER, Paul Hastings Janofsky & Walker, LLP, New York, NY, for Petitioner-Appellant.

JOHN D. WINTER, Patterson Belknap Webb & Tyler LLP, New York, NY, for Respondent-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Petitioner-Appellant Frontera Resources Azerbaijan Corporation ("Frontera") appeals from the dismissal by the United States District Court for the Southern District of New York (Richard J. Holwell, Judge) of its petition to enforce a Swedish arbitration award against Respondent-Appellee State Oil Corporation of the Azerbaijan Republic ("SOCAR"). The district court granted SOCAR's motion to dismiss for want of personal jurisdiction. See Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic, 479 F. Supp. 2d 376, 388 (S.D.N.Y. 2007). We conclude that SOCAR is not entitled to the Due Process Clause's jurisdictional protections if it is an agent of the Azerbaijani state. Accordingly, we vacate and remand for the district court to reconsider its analysis.

## BACKGROUND

Frontera and SOCAR are two companies in the oil industry. Frontera is based in the Cayman Islands, and SOCAR is based in and owned by the Republic of Azerbaijan ("Azerbaijan"). In

November 1998, the parties entered into a written agreement (the "Agreement") under which Frontera developed and managed oil deposits in Azerbaijan and delivered oil to SOCAR. In 2000, a dispute arose over SOCAR's refusal to pay for some of this oil, and in response, Frontera allegedly sought to sell oil that was supposed to be sold to SOCAR to parties outside of Azerbaijan instead. In November 2000, after instructing local customs authorities to block Frontera's oil exports, SOCAR seized the oil.

In March 2002, the bank that had financed Frontera's involvement in Azerbaijan foreclosed on its loan, forcing Frontera to assign its rights in the project to the bank. In July 2002, the bank settled its claims with SOCAR. Frontera, however, continued to seek payment for both previously delivered and seized oil. Based on its settlement with the bank, SOCAR denied liability to Frontera.

After Frontera and SOCAR were unable to settle their dispute amicably, Frontera served SOCAR in July 2003 with a request for arbitration as per the Agreement. In January 2006, after a hearing on the merits with full participation by both parties, a Swedish arbitral tribunal awarded Frontera approximately $1.24 million plus interest.

On February 14, 2006, Frontera filed a petition in the Southern District of New York to confirm the award pursuant to

Article II(2) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), opened for signature June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, implemented at 9 U.S.C. § 207. The district court dismissed the petition for lack of personal jurisdiction, on the basis that SOCAR had insufficient contacts with the United States to meet the Due Process Clause's requirements for the assertion of personal jurisdiction. The district court questioned the soundness of according due process protections to SOCAR, a company owned by Azerbaijan, but nonetheless applied the traditional due process test based on our precedent in Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300 (2d Cir. 1981). The district court also declined to find quasi in rem jurisdiction over SOCAR, because Frontera had not identified specific SOCAR assets within the court's jurisdiction. The district court denied jurisdictional discovery and dismissed Frontera's petition. This appeal followed.

**DISCUSSION**

Frontera contends (1) that a court does not need personal jurisdiction over a party in order to confirm a foreign arbitral award against that party, and (2) that Texas Trading should be overruled, because the Due Process Clause's protections should not apply to foreign states or their instrumentalities. Frontera also challenges the district court's denial of jurisdictional

-4-

discovery.

## I.  Personal Jurisdiction over SOCAR

When considering a district court's dismissal for lack of personal jurisdiction, we review its factual findings for clear error and its legal conclusions de novo.  See Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004).

Generally, personal jurisdiction has both statutory and constitutional components.  A court must have a statutory basis for asserting jurisdiction over a defendant, see Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005), and the Due Process Clause typically also demands that the defendant, if "not present within the territory of the forum, . . . have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The parties do not challenge the district court's reliance on the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a), as the statutory basis for jurisdiction over SOCAR.  See Frontera, 479 F. Supp. 2d at 379-80; see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989) (stating that the FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court").  This appeal instead is focused on the Due

Process Clause's place in the district court's analysis.

The district court dismissed Frontera's petition because it concluded that SOCAR's contacts with the United States were insufficient to meet the Due Process Clause's demands for personal jurisdiction. Frontera contends that this was in error both because personal jurisdiction is not necessary for the requested relief, and because SOCAR is not entitled to the Due Process Clause's protections. We address each argument in turn.

**A. The Need for Jurisdiction**

Frontera argues that a district court does not need personal jurisdiction over a respondent to confirm a foreign arbitral award against that party. Yet, Frontera contends, the district court's dismissal of its petition "necessarily rest[ed] upon an assumption" that personal jurisdiction over SOCAR was indispensable. (Appellant's Br. at 38.)

We read the district court's decision differently. Although the district court considered whether it could assert personal jurisdiction over SOCAR, it did not make that question dispositive. Instead, after finding SOCAR's contacts with the United States insufficient to establish personal jurisdiction, the district court examined whether it had jurisdiction over any of SOCAR's assets, because "in the absence of minimum contacts, quasi in rem jurisdiction may be exercised to attach property to collect a debt." Frontera, 479 F. Supp. 2d at 387. Thus, by

suggesting that the district court required personal jurisdiction, Frontera misunderstands the framework of the court's analysis. And to the extent that Frontera's challenge is to the district court's requirement of either personal or quasi in rem jurisdiction, it is without merit.

We have previously avoided deciding whether personal or quasi in rem jurisdiction is required to confirm foreign arbitral awards pursuant to the New York Convention. See Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202, 207 (2d Cir. 2003). However, the numerous other courts to have addressed the issue have each required personal or quasi in rem jurisdiction. See, e.g., Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 178-79 (3d Cir. 2006); Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1120-22 (9th Cir. 2002); Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212-13 (4th Cir. 2002); see also Transatl. Bulk Shipping Ltd. v. Saudi Chartering S.A., 622 F. Supp. 25, 27 (S.D.N.Y. 1985).

Frontera contends that none of these courts addressed the precise argument it advances here: that there is no "positive statutory or treaty basis" for such a jurisdictional requirement.[1] (Appellant's Reply Br. at 11.) The federal

[1] This position is not as novel as Frontera suggests. The Ninth Circuit rejected an identical argument in Glencore Grain. See 284 F.3d at 1121 ("[I]t is not significant in the least that the . . . [New York] Convention lacks language requiring personal jurisdiction over the litigants. We hold that

-7-

statute that implements the New York Convention requires a court to confirm an award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  Article V of the New York Convention "provides the exclusive grounds for refusing confirmation," Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997), and specifies seven grounds for refusing to enforce an arbitral award, none of which include a lack of jurisdiction over the respondent or the respondent's property, see New York Convention at art. 5, 21 U.S.T. at 2517.  Frontera accordingly argues that we cannot impose a jurisdictional requirement if the Convention does not already have one.  We disagree.

Unlike "state courts[,] [which] are courts of general jurisdiction[,] . . . federal courts are courts of limited jurisdiction which thus require a specific grant of jurisdiction." Foxhall Realty Law Offices, Inc. v. Telecomm. Premium Servs., Ltd., 156 F.3d 432, 435 (2d Cir. 1998) (citing Sheldon v. Sill, 49 U.S. (8 How.) 441, 449 (1850)).  "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de

_____

neither the Convention nor its implementing legislation removed the district courts' obligation to find jurisdiction over the defendants in suits to confirm arbitration awards.").

-8-

Guinee, 456 U.S. 694, 701 (1982).  While the requirement of subject matter jurisdiction "functions as a restriction on federal power," id. at 702, the need for personal jurisdiction is fundamental to "the court's power to exercise control over the parties," Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979).  "Some basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the court's power."  Glencore Grain, 284 F.3d at 1122 (quoting Transatl. Bulk Shipping, 622 F. Supp. at 27).

Because of the primacy of jurisdiction, "jurisdictional questions ordinarily must precede merits determinations in dispositional order."  Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007).  "[T]he items listed in Article V as the exclusive defenses . . . pertain to substantive matters rather than to procedure."  Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr., 311 F.3d 488, 496 (2d Cir. 2002) (emphasis added).  Article V's exclusivity limits the ways in which one can challenge a request for confirmation, but it does nothing to alter the fundamental requirement of jurisdiction over the party against whom enforcement is being sought.

Frontera argues that the Supreme Court suggested otherwise in Shaffer v. Heitner, 433 U.S. 186 (1977), in the following footnote:

-9-

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

Id. at 210 n.36. But while this footnote indicated, in dicta, that a court might not need jurisdiction over a respondent's person when enforcing a debt — "the Shaffer principle" that Frontera makes much of, (Appellant's Br. at 46) — it nonetheless assumed that such a court would still have jurisdiction over the respondent's property. And in this regard, the district court's approach in no way conflicted with Shaffer. The district court did not view its lack of personal jurisdiction over SOCAR as fatal to Frontera's petition; instead, the court then appropriately considered whether it could assert jurisdiction over SOCAR's property.

We therefore hold that the district court did not err by treating jurisdiction over either SOCAR or SOCAR's property as a prerequisite to the enforcement of Frontera's petition. The district court may, however, have given the Constitution's Due Process Clause an unwarranted place in its analysis, which we discuss next.

**B. SOCAR's Rights Under the Due Process Clause**

The district court recognized that our precedent Texas Trading compelled it to hold that SOCAR possessed rights under

the Due Process Clause, thus requiring that jurisdiction over SOCAR meet the minimum contacts requirements of International Shoe. The district court, however, questioned Texas Trading's soundness. These doubts were well-founded.

The Due Process Clause famously states that "no person shall be . . . deprived of life, liberty or property without due process of law." U.S. Const. amend. V (emphasis added). In Texas Trading, we held that a foreign state was a "person" within the meaning of the Due Process Clause, and that a court asserting personal jurisdiction over a foreign state must — in addition to complying with the FSIA — therefore engage in "a due process scrutiny of the court's power to exercise its authority" over the state. 647 F.2d at 308, 313 ("[T]he [FSIA] cannot create personal jurisdiction where the Constitution forbids it."). Texas Trading reached this conclusion without much analysis, while also noting that cases on point were "rare." Id. at 313. The FSIA had been enacted only five years earlier, and pre-FSIA suits against foreign states were generally supported by quasi in rem jurisdiction. Id. Subsequently, we applied Texas Trading not only to foreign states but also to their agencies and instrumentalities. See, e.g., Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala, 989 F.2d 572, 579-80 (2d Cir. 1993) (applying Texas Trading to a foreign trading company wholly owned by Romania that "promoted

-11-

ship sales through its governmental office in Manhattan").

Since Texas Trading, however, the case law has marched in a different direction.  In Republic of Argentina v. Weltover, Inc., the Supreme Court "assum[ed], without deciding, that a foreign state is a 'person' for purposes of the Due Process Clause," 504 U.S. 607, 619 (1992), but then cited South Carolina v. Katzenbach, 383 U.S. 301, 323-24 (1966), which held that "States of the Union are not 'persons' for purposes of the Due Process Clause," 504 U.S. at 619.  Weltover did not require deciding the issue because Argentina's contacts satisfied the due process requirements, see id. at 619 & n.2, but the Court's implication was plain:  If the "States of the Union" have no rights under the Due Process Clause, why should foreign states?

After Weltover, we noted that "we are uncertain whether [Texas Trading] remains good law."  Hanil Bank v. PT Bank Negara Indon., 148 F.3d 127, 134 (2d Cir. 1998).  But we went no further in Hanil Bank because the due process requirements were satisfied in that case.  See id.  The instant case is different, however, as only the Due Process Clause prevented the district court from asserting personal jurisdiction over SOCAR.

In Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir. 2002), the D.C. Circuit reasoned that because "the word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of

interpretation, be expanded to encompass the States of the Union," Katzenbach, 383 U.S. at 323, "absent some compelling reason to treat foreign sovereigns more favorably than 'States of the Union,' it would make no sense to view foreign states as 'persons' under the Due Process Clause," 294 F.3d at 96. The Price court found no such reason, see id. at 95-100, and we find that case's analysis persuasive. As the Price court noted, the States of the Union "both derive important benefits [from the Constitution] and must abide by significant limitations as a consequence of their participation [in the Union]," id. at 96,[2] yet a "'foreign State lies outside the structure of the Union,'" id. (quoting Principality of Monaco v. Mississippi, 292 U.S. 313, 330 (1934)).

If the States, as sovereigns that are part of the Union, cannot "avail themselves of the fundamental safeguards of the Due Process Clause," Price, 294 F.3d at 97, we do not see why foreign states, as sovereigns wholly outside the Union, should be in a more favored position. This is particularly so when the Supreme Court has "[n]ever . . . suggested that foreign nations enjoy

---

[2] Price compared U.S. Const. art. I, § 10 (prohibiting specific acts by the States), with id. at art. IV, § 4 ("The United States shall guarantee to every State in this Union a Republican form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence."), and id. at art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Law of the State to the Contrary notwithstanding."). 294 F.3d at 96.

-13-

rights derived from the Constitution," and when courts have instead "relied on principles of comity and international law to protect foreign governments in the American legal system." Id. For the reasons discussed by the Price court in its thorough opinion, we "are unwilling to interpret the Due Process Clause as conferring rights on foreign nations that States of the Union do not possess." Id. at 99. Thus, we hold that the district court erred, albeit understandably in light of Texas Trading, by holding that foreign states and their instrumentalities are entitled to the jurisdictional protections of the Due Process Clause.

SOCAR argues otherwise by defending not Texas Trading's reasoning but its significance as precedent. And, to be sure, our court's decisions are binding until overruled by us sitting en banc or by the Supreme Court, United States v. Wilkerson, 361 F.3d 717, 732 (2d Cir. 2004), neither of which has happened to Texas Trading. "We do, however, recognize an exception to this general rule where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." Gelman v. Ashcroft, 372 F.3d 495, 499 (2d Cir. 2004) (internal quotation marks omitted). Although Weltover arguably casts sufficient doubt on Texas Trading to justify its overruling by this panel, see Hanil Bank, 148 F.3d at 134, we have nonetheless circulated this opinion to all active members of our court, and none has

-14-

objected to our departure from Texas Trading. See United States v. Parkes, 497 F.3d 220, 230 n.7 (2d Cir. 2007) (describing our "mini-en banc" process). Accordingly, to the extent that Texas Trading conflicts with our holding today that foreign states are not "persons" entitled to rights under the Due Process Clause, it is overruled.

Simply overruling Texas Trading, however, and holding that a sovereign state does not enjoy due process protections does not decide the precise question in this case, because SOCAR is not a sovereign state, but rather an instrumentality or agency of one. Frontera contends that, because the FSIA treats foreign states and their agencies and instrumentalities identically, see Kensington Int'l Ltd. v. Itoua, 505 F.3d 147, 153 (2d Cir. 2007) (citing 28 U.S.C. § 1603(a)), we should treat SOCAR just as we would treat Azerbaijan for constitutional purposes. The simple fact that SOCAR is deemed a foreign state as a statutory matter, however, does not answer the constitutional question of SOCAR's due process rights. SOCAR may indeed lack due process rights like a foreign state, but similar statutory treatment will not be the reason.

However, if the Azerbaijani government "exerted sufficient control over" SOCAR "to make it an agent of the State, then there is no reason to extend to [SOCAR] a constitutional right that is denied to the sovereign itself." TMR Energy Ltd. v. State Prop.

Fund of Ukr., 411 F.3d 296, 301 (D.C. Cir. 2005). Although "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such," this presumption can be overcome if the state so "extensively control[s]" the instrumentality "that a relationship of principal and agent is created," or if "adher[ing] blindly to the corporate form . . . would cause . . . injustice." First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec"), 462 U.S. 611, 626-27, 629, 632 (1983); see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 252 (2d Cir. 2000) ("While the presumption of separateness is a strong one, it may be overcome if a corporate entity is so extensively controlled by the sovereign that the latter is effectively the agent of the former, or if recognizing the corporate entity as independent would work a fraud or injustice."). Although Bancec asked when a state instrumentality can be treated like its state for "the attribution of liability," id. at 622 n.11, we think, as the D.C. Circuit did in TMR Energy, that Bancec's analytic framework is also applicable when the question is whether the instrumentality should have due process rights to which the state is not entitled. See TMR Energy, 411 F.3d at 301; see also, e.g., Walter Fuller Aircraft Sales, Inc. v. Republic of the Phil., 965 F.2d 1375, 1382 (5th Cir. 1992) ("The broader principles upon

-16-

which Bancec was based . . . are undoubtedly relevant whenever a plaintiff seeks to disregard a foreign government instrumentality . . . ."). Accordingly, if SOCAR is an agent of the Azerbaijani state, as recognized in Bancec and subsequent cases, then, like Azerbaijan, SOCAR lacks due process rights.

The district court did not decide whether SOCAR is an agent of the state because Texas Trading rendered the question unnecessary and, unsurprisingly, there was scant briefing on the issue. SOCAR suggests that the parties' lack of focus on the question should be fatal to Frontera's position, because Frontera "bears the burden of proving that the corporate entity should not be presumed distinct from a sovereign or sovereign entity." Zappia, 215 F.3d at 252. But the Bancec analysis and Frontera's related burden were not relevant until our decision today, nor did Frontera argue that Bancec should apply. Cf. Brooklyn Legal Servs. Corp. v. Legal Servs. Corp., 462 F.3d 219, 232 (2d Cir. 2006) ("It is our role to ensure that in making factual findings, the district court applies the proper legal test and applies it correctly."). Moreover, using the parties' inattention to SOCAR's relationship with Azerbaijan to decide that SOCAR is not an agent of the state would still not resolve this appeal. We would then have to determine whether SOCAR, as a corporation owned by a foreign state but not the state's agent, was entitled to the Due Process Clause's protections.

-17-

In TMR Energy, the D.C. Circuit called this last question "far from obvious." 411 F.3d at 302 n.*. The TMR Energy court observed that "'aliens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country.'" Id. (quoting United States v. Verdugo-Urquidez, 494 U.S. 259, 271 (1990)) (alteration in TMR Energy). The Supreme Court has gone so far as to accord due process protections to privately owned foreign corporations. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418-19 (1984); see also, e.g., Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 571 (2d Cir. 1996). Whether, and to what extent, it would do so for state-owned foreign corporations has not been decided. And, given the present posture of this litigation, it would be premature for us to address this question without hearing first from the court below. See Farricielli v. Holbrook, 215 F.3d 241, 246 (2d Cir. 2000) (per curiam) ("It is our settled practice to allow the district court to address arguments in the first instance."). Accordingly, we choose to remand so that in the first instance the district court can determine, in light of Texas Trading's demise and Bancec's new relevance to this context, (1) whether SOCAR is an agent of Azerbaijan, and if not, (2) whether SOCAR is entitled to the protections of the Due

-18-

Process Clause.

## II. Jurisdictional Discovery

Frontera also argues that the district court erred by rejecting its request for limited discovery of SOCAR's contacts with the United States.  We review the district court's decision for an abuse of discretion.  See Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998).  This issue is relevant only if the Due Process Clause protects SOCAR, which is for the district court to determine on remand.

"A district court has wide latitude to determine the scope of discovery," In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008), and is typically within its discretion to deny jurisdictional discovery when "the plaintiff [has] not made out a prima facie case for jurisdiction," Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007) (citing cases).  Assuming for the moment that SOCAR has the jurisdictional protections of the Due Process Clause, to establish jurisdiction Frontera must show that SOCAR had "continuous and systematic general business contacts" with the United States, Metro. Life Ins. Co., 84 F.3d at 568 (quoting Helicopteros, 466 U.S. at 416), a highly fact-sensitive "contextual inquiry" with no one factor having "talismanic significance," id. at 570-71.

Frontera argued that SOCAR's production-sharing contracts with several U.S. oil companies and loan agreement with "a

-19-

syndicate that included [a] U.S. bank" brought it within the district court's jurisdiction. Frontera, 479 F. Supp. 2d at 386. Frontera also alleged that "it is highly likely that at least a portion of [SOCAR's] oil and gas revenues are processed through U.S.-based banks." Id. at 386-87 (alteration in original). The district court dismissed this latter allegation as "conclusory," and then found the rest of Frontera's claims insufficient to demonstrate a prima facie case for jurisdiction, reasoning that "[t]he fact that American oil companies and one bank have entered into contracts with SOCAR for oil production in Azerbaijan does not demonstrate a continuous and systematic presence in the United States." Id. "In the absence of any prima facie showing of personal jurisdiction," the district court found it "inappropriate to subject SOCAR to the burden and expense of discovery" and denied Frontera's request. Id. at 387.

Frontera contends that our decision in Seetransport demonstrates that the district court's denial was erroneous. In Seetransport, we held that a foreign company's "deliberate[]" solicitations of business through U.S.-based representatives "with a fair measure of permanence or continuity" met the minimum requirements for general personal jurisdiction. 989 F.2d at 580. Frontera argues that SOCAR's contracts with U.S. oil and financial companies "were likely the product of the type of 'deliberate solicitations'" found sufficient in Seetransport, see

*id.*, and that the district court should therefore have granted jurisdictional discovery. (Appellant's Br. at 54-55.) But this is pure speculation on Frontera's part.

Seetransport addressed solicitations that were "deliberate[,] and not occasional[] or casual[]," with the record establishing the defendant's use of a New York office. 989 F.2d at 580. Here, the fact that SOCAR has relationships with American companies, without more, could just as easily be the result of occasional or casual solicitations, or solicitations outside the United States. Thus, because Frontera has not pointed to anything in the record that suggests otherwise, we will not disturb the district court's discretionary decision not to allow discovery. See Best Van Lines, 490 F.3d at 255 ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."). The district court is free to consider further discovery requests in light of the questions it must decide on remand.

**III. Forum Non Conveniens**

Finally, SOCAR asks us to affirm the district court's dismissal on the alternate basis of forum non conveniens. Having dismissed for want of jurisdiction, the district court expressly declined to address this argument. Following "our settled practice" of allowing district courts to address arguments in the

-21-

first instance, <u>Farricielli</u>, 215 F.3d at 246, we express no view on SOCAR's <u>forum non conveniens</u> argument, which it is free to raise again on remand.

**CONCLUSION**

For the foregoing reasons, we VACATE the district court's dismissal of Frontera's petition and REMAND for further proceedings.