AlbaniaBEG Ambient Sh.p.k. v Enel S.p.A. (2018 NY Slip Op 00928)





AlbaniaBEG Ambient Sh.p.k. v Enel S.p.A.


2018 NY Slip Op 00928


Decided on February 8, 2018


Appellate Division, First Department


Friedman, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 8, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman,J.P.
Richard T. Andrias
Barbara R. Kapnick
Ellen Gesmer, JJ.


152679/14 3306 

[*1]AlbaniaBEG Ambient Sh.p.k., Plaintiff-Respondent,
v
Enel S.p.A., et al., Defendants-Appellants.



Defendants appeal from the order of the Supreme Court, New York County (Paul Wooten, J.), entered October 22, 2014, which, insofar as appealed from, denied their motion to dismiss plaintiff's motion for summary judgment in lieu of complaint for recognition and enforcement of a foreign country judgment pursuant to CPLR article 53.




Davis Polk & Wardwell LLP, New York (Antonia J. Perez-Marques, David B. Toscano, Gina M. Cora and Joseph M. Spadola of counsel), for appellants.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Tai-Heng Cheng, Julia J. Peck and Cory D. Struble of counsel), for respondent.



FRIEDMAN, J.P.


This appeal arises from a proceeding to recognize and enforce a foreign country judgment under CPLR article 53. Defendants have raised colorable statutory grounds for denying the foreign judgment recognition. Under these circumstances, we hold that there must be either an in personam or an in rem jurisdictional basis for maintaining the recognition and enforcement proceeding against defendants in New York. Because plaintiff does not claim that such jurisdiction is demonstrated on the existing record, and, on appeal, does not seek an opportunity to gather evidence to demonstrate that such jurisdiction exists, we conclude that New York lacks jurisdiction to entertain this proceeding. Accordingly, we reverse the order appealed from and grant defendants' motion to dismiss the proceeding pursuant to CPLR 3211(a)(8).
Plaintiff AlbaniaBEG Ambient Sh.p.k. (ABA) is an Albanian subsidiary of nonparty Becchetti Energy Group S.p.A. (BEG), an Italian company. Defendants Enel S.p.A. and [*2]Enelpower S.p.A. are, respectively, parent and subsidiary, both organized under Italian law and having their principal places of business in Italy. Enel is Italy's largest power company.
In February 2000, BEG and Enelpower entered into an agreement (hereinafter, the BEG-Enelpower agreement) for the possible construction of a hydroelectric power plant in Albania, pursuant to a concession previously granted to BEG by the Albanian government. The BEG-Enelpower agreement contained an Italian choice-of-law clause and provided for the resolution of any disputes by arbitration in Rome. Less than a year later, Enelpower concluded that the project was not feasible and withdrew from it, pursuant (as Enelpower claimed) to its right of withdrawal under the BEG-Enelpower agreement.
After Enelpower withdrew from the Albanian project, BEG initiated an arbitration against it in Rome, claiming that the withdrawal was a breach of contract and an act of bad faith. In December 2002, the Rome arbitration panel issued an award dismissing BEG's claims against Enelpower. BEG brought proceedings in the Italian courts seeking to have the award nullified. BEG's arguments for nullification of the award were rejected by a judgment of the Court of Appeals of Rome in 2009, and that judgment was affirmed by the Supreme Court of Italy in 2010.[FN1]
In 2004, after BEG's claim had been rejected in the Rome arbitration, ABA — an Albanian subsidiary that BEG had formed to hold its power concession from the Albanian government — sued Enel and Enelpower in an Albanian court (the Tirana District Court) on claims of "tort and unfair competition." ABA took the position that its claims were not precluded by the arbitration clause of the BEG-Enelpower agreement, or by the award rendered against BEG in the Rome arbitration, because ABA was not a party to the BEG-Enelpower agreement (which had been executed before ABA was in existence), was not asserting contractual claims, and had not been a party to the arbitration. In March 2009, the Tirana District Court rendered a judgment in favor of ABA, awarding it damages in the amount of 󌍉,188,500 for the year 2004 and in an amount to be calculated by a specified formula for each of the years 2005 through 2011 [FN2]. The Tirana Court of Appeals affirmed the judgment in April 2010, and, in [*3]2011, the Supreme Court of Albania declined to entertain a further appeal.
In March 2014, ABA served on defendants, and filed in Supreme Court, New York County, a summons and a motion for summary judgment in lieu of complaint pursuant to CPLR 3213, seeking recognition and enforcement of the Albanian judgment pursuant to CPLR article 53 ("Recognition of Foreign Country Money Judgments") in the amount of ,091,870, plus interest [FN3]. ABA simultaneously moved by order to show cause for a prejudgment order of attachment and expedited discovery. The order to show cause granted ABA an ex parte temporary restraining order directing defendants "and all other persons, entities, subsidiaries, affiliates, attorneys, agents and garnishees acting in concert with them" not to sell, assign or transfer any New York assets, "to the extent of $597,493,543.85," in which defendants "and/or their alter egos" might have an interest, pending the hearing on the application for an attachment.
The affirmation by counsel supporting ABA's summary judgment motion and TRO application stated that defendants had "no known presence in the state of New York," and did not identify any property that defendants might own in New York. However, the memorandum of law in support of the summary judgment motion stated: "Defendants have subsidiaries in New York that own multiple power plants. Defendants have also raised billions of dollars of financing through the issuance of capital securities that are governed by the laws of the state of New York."
In April 2014, defendants, before submitting their opposition on the merits to the motion for summary judgment in lieu of complaint, moved by order to show cause to dismiss the action for lack of personal jurisdiction (CPLR 3211[a][8]) and for lack of subject matter jurisdiction under Business Corporation Law § 1314 (CPLR 3211[a][2]). In support of the branch of the application seeking dismissal for lack of personal jurisdiction, defendants pointed out that ABA had conceded that both defendants were " foreign corporations with no known presence in the state of New York.'" Defendants further noted that ABA had neither "identif[ied] any property of defendants within the jurisdiction" nor "allege[d] any contacts between the defendants and New York that bear the slightest relation to the dispute" underlying the Albanian judgment. On this basis, defendants argued that dismissal was required by the United States Supreme Court's decision in Daimler AG v Bauman (571 US __, 134 S Ct 746 [2014]), which had been issued three months earlier.
In addition to their jurisdictional arguments, defendants noted that, if their motion to dismiss on jurisdictional grounds were denied, they intended to oppose the summary judgment motion based on the existence of "numerous grounds for non-recognition of the Albanian judgment" under article 53. Specifically, defendants argued in their memorandum of law that: (1) "[t]he Albanian judgment conflicts with a prior final and conclusive judgment by the Italian courts" (see CPLR 5304[b][5]); (2) "[t]he proceeding in the Albanian court was contrary to an agreement between the parties to adjudicate their disputes by arbitration in Italy" (see CPLR 5304[b][6]); (3) "Albania does not provide impartial tribunals or procedures compatible with due [*4]process" (see CPLR 5304[a][1]); and (4) the Albanian judgment, which sets forth a formula to determine most of the amount to be recovered, "is not for the recovery of a sum of money,' rendering it not conclusive'" (see CPLR 5301, 5302, 5303).
On April 22, 2014, Supreme Court heard oral argument on defendants' application to vacate permanently the previously granted TRO (which the court had previously vacated pending a hearing). At this appearance, defendants' counsel, while not disputing ABA's contention that Enel had subsidiaries that did business in New York, represented to the court, on the record, that defendants Enel and Enelpower themselves "do no business in New York" and "don't have any property in New York." ABA's counsel, for his part, conceded to the court that he "d[id] not have information" to indicate that defendants Enel and Enelpower (as opposed to certain other subsidiaries of Enel) were doing business in New York. At the close of the hearing, the court permanently vacated the TRO, a determination that is not at issue on this appeal.
By order entered October 22, 2014, Supreme Court denied defendants' motion to dismiss [FN4]. In so doing, Supreme Court held, as relevant to this appeal, that, under a decision this Court had issued while the motion was pending (Abu Dhabi Commercial Bank PJSC v Saad Trading, Contr. & Fin. Servs. Co., 117 AD3d 609 [1st Dept 2014]), ABA could maintain the article 53 proceeding for recognition and enforcement of the Albanian judgment even if defendants (as they claimed) were not subject to personal jurisdiction in New York and had no property in New York. The court further held that it had subject matter jurisdiction to entertain the proceeding under Business Corporation Law § 1314. This appeal by defendants ensued.[FN5]
Initially, we briefly review CPLR article 53, which, as previously noted, is entitled "Recognition of Foreign Country Money Judgments." The Court of Appeals has explained:
"New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts, and in 1970, New York adopted the Uniform Foreign Money-Judgments Recognition Act [the Uniform Act] as CPLR article 53. Article 53 was designed to codify and clarify existing case law on the subject and, more importantly, to promote the efficient enforcement of New York judgments abroad by assuring foreign jurisdictions that their judgments would receive streamlined enforcement here" (CIBC Mellon Trust Co. v Mora Hotel Corp., 100 NY2d 215, 221 [2003] [citations and footnotes omitted], cert denied 540 US 948 [2003]).
Unlike judgments of sister states, to which the Full Faith and Credit Clause of the Constitution applies, judgments of foreign countries are recognized in New York under the doctrine of comity (see Byblos Bank Europe, S.A. v Sekerbank Turk Anonym Syrketi, 10 NY3d 243, 247 [2008]), according to the principles and procedures set forth in article 53. While virtually the only ground on which to deny recognition to a sister-state judgment is that the rendering court lacked jurisdiction (see V.L. v E.L., __ US __, 136 S Ct 1017, 1020 [2016]; [*5]Siegel, NY Prac § 435 at 761-762 [5th ed 2011]; Richard C. Reilly, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5402:2), the grounds for nonrecognition of a foreign country judgment under article 53 are significantly broader, as described below. However, once the absence of grounds for nonrecognition of the foreign country judgment has been established, "the foreign judgment should be enforced in New York under well-settled comity principles without microscopic analysis of the underlying proceeding" (John Galliano, S.A. v Stallion, Inc., 15 NY3d 75, 81 [2010] [internal quotation marks omitted], cert denied 562 US 893 [2010]).
Article 53 "applies to any foreign country judgment which is final, conclusive and enforceable where rendered" (CPLR 5302). The term "foreign country judgment" is defined as "any judgment of a foreign state granting or denying recovery of a sum of money" (CPLR 5301[b]), subject to certain exceptions not relevant here. CPLR 5303, the article's operative section, provides:
"Except as provided in section 5304, a foreign country judgment meeting the requirements of section 5302 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. Such a foreign judgment is enforceable by an action on the judgment, a motion for summary judgment in lieu of complaint, or in a pending action by counterclaim, cross-claim or affirmative defense."
As noted in CPLR 5303, CPLR 5304 sets forth grounds for denying recognition to a foreign country judgment. As here relevant, CLPR 5304(a) provides that a foreign country judgment "is not conclusive" — meaning that nonrecognition is mandatory — if "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law" (CPLR 5304[a][1])[FN6]. In support of their contention that the Albanian courts fell into this category, defendants adduced reports by the United States Departments of State and Commerce noting that corruption and susceptibility to political pressure were serious problems in the Albanian judicial system during the pendency of ABA's lawsuit against defendants.
The next subsection, CPLR 5304(b), sets forth eight grounds on which the court may, in the exercise of its discretion, decline to recognize a foreign country judgment (see Byblos, 10 NY3d at 248). As set forth in their appellate brief, defendants have raised three of these discretionary defenses in the ongoing proceedings in Supreme Court:
(1) Based on the arbitration clause of the BEG-Enelpower agreement, defendants claim that "the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court" (CPLR 5304[b][6]);
(2) Based on the Italian courts' rejection of BEG's attempt to have the arbitration award nullified, defendants claim that the Albanian judgment "conflicts with another final and conclusive judgment" (CPLR 5304[b][5]); and
(3) Based on what defendants characterize as the Albanian judgment's [*6]"grossly disproportionate damages formula" and its alleged "trampl[ing] [upon] New York's strong policy in favor of arbitration by circumventing a prior arbitration agreement and award," defendants claim that the Albanian judgment is "repugnant to the public policy of this state" (CPLR 5304[b][4]).[FN7]
In addition to raising the foregoing grounds for nonrecognition under CPLR 5304, defendants claim that the Albanian judgment does not even satisfy the prerequisites for recognition set forth in CPLR 5301, 5302 and 5303. As set forth in their appellate brief, defendants have argued that the Albanian judgment does not "grant[] . . . recovery of a sum of money" (CPLR 5301[b], 5302), and therefore is not "conclusive" (CPLR 5303), because the formula it sets forth for calculating the bulk of the damages (for seven of the eight years at issue) uses a variable — the price of energy — that is not clearly defined, leaving its definition to be resolved through future litigation — which appears to be taking place in this proceeding [FN8]. In fact, defendants argue, the Albanian judgment itself expressly contemplates future proceedings, involving expert evidence, to set the damages for the period 2005-2011, for which it requires ABA to pay a "lawsuit tax" before execution. Because ABA has not paid this tax, and the amount of damages for 2005-2011 has not been calculated by experts, as contemplated by the judgment itself, defendants also argue that the judgment is not "enforceable where rendered," as [*7]required by CPLR 5302.[FN9]
Having reviewed article 53 and defendants' substantive objections to recognition of the Albanian judgment thereunder, we now turn to the question of whether this proceeding seeking such recognition requires an in personam or in rem jurisdictional predicate. In this regard, defendants continue to argue on appeal that the United States Supreme Court's 2014 Daimler decision requires the dismissal of this article 53 proceeding on the ground that, under Daimler, they are not subject to general personal jurisdiction in New York. In Daimler, defendants point out, the Supreme Court significantly narrowed the grounds on which a court may, consistent with the requirements of the Due Process Clause (US Const, 14th Amend, § 1), exercise "general or all-purpose jurisdiction" (id. at 751) over a defendant, meaning the power "to hear any and all claims against [it]" (id. [internal quotation marks omitted]), including claims having no connection to the forum [FN10]. The Daimler Court held that a corporation is subject to general jurisdiction only in a state where its "affiliations . . . are so continuous and systematic as to render it essentially at home [there]" (id. at 761 [internal quotation marks and brackets omitted]), meaning the state "where [the corporation] is incorporated or has its principal place of business" (id. at 760).
As entities incorporated under Italian law and having their principal places of business in Italy, defendants plainly are not subject to general jurisdiction in New York under the Daimler standard. It is also undisputed that the claim on which the Albanian judgment is based has no connection to New York. From these premises, defendants draw the conclusion that New York lacks jurisdiction to entertain this proceeding seeking the recognition and enforcement of the Albanian judgment under article 53. For the reasons explained below, we do not agree with defendants' contention that Daimler compels this conclusion.
At issue in Daimler was the existence of personal jurisdiction for purposes of adjudicating, in a plenary action, an unliquidated claim against the corporate defendant in the first instance. The question of the constitutional requirements for jurisdiction to entertain a proceeding to recognize and enforce an already existing foreign judgment was not before the Supreme Court in Daimler and was neither discussed nor alluded to in the Court's opinion (see Linda J. Silberman and Aaron D. Simowitz, Recognition and Enforcement of Foreign Judgments and Awards: What Hath Daimler Wrought?, 91 NYU L Rev 344, 347 [2016] [hereinafter, Silberman & Simowitz] [noting that Daimler and the precedent upon which it chiefly relied, Goodyear Dunlop Tires Operations, S.A. v Brown (564 US 915 [2011]), "said nothing about jurisdiction in the very different context of recognition and enforcement"]).
We do not believe that Daimler's restriction of general jurisdiction to states where a corporate defendant is "at home" should be extended to proceedings to recognize or enforce [*8]foreign judgments. In Shaffer v Heitner (433 US 186 [1977]), the United States Supreme Court held that, for purposes of initially adjudicating a claim on its merits, quasi in rem jurisdiction — that is, jurisdiction based solely on the presence of the defendant's property in the forum state (see Koehler v Bank of Bermuda Ltd., 12 NY3d 533, 538 [2009]; see also Hanson v Denckla, 357 US 235, 246 n 12 [1958]; Restatement [Second] of Judgments § 32 [1982]) — may be exercised constitutionally only where "that property is . . . the subject matter of th[e] litigation, [or] . . . the underlying cause of action [is] related to the property" (433 US at 213), so as to conform to "the standard of fairness and substantial justice" (id. at 206) established by International Shoe Co. v Washington (326 US 310, 316 [1945] [for a defendant to be subject to jurisdiction in the forum, due process requires that "he have certain minimum contacts with (the forum) so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice"] [internal quotation marks omitted]). At the same time it announced this restriction of quasi in rem jurisdiction for purposes of hearing a plenary action, the Supreme Court stated in Shaffer that the presence of a judgment debtor's assets in the forum remained a jurisdictional basis for proceedings to enforce a previously rendered foreign judgment, even if the forum state and the defendant's property therein had no connection to the claim underlying the judgment:
"Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter" (433 US at 210 n 36).[FN11]
Shaffer's continuation of property-based jurisdiction to enforce a foreign judgment is supported by the consideration — particularly weighty in cases of judgment debtors domiciled in foreign countries, where courts may not always be inclined to enforce judgments against local domiciliaries — that "a wrongdoer should not be able to avoid payment of his obligations by the expedient of removing his assets to a place where he is not subject to an in personam suit'" (Shaffer, 433 US at 210, quoting Restatement [Second] of Conflict of Laws § 66, Comment a [1971]; see also Silberman & Simowitz, 91 NYU L Rev at 379 ["The Restatement observes that, without postjudgment asset jurisdiction, a debtor could easily render itself judgment-proof simply by removing its assets to a place where it was not subject to personal jurisdiction"]). In view of the need to foreclose avenues by which duly rendered judgments might be defeated, Shaffer recognized that it is not "unfair[]" to allow execution on a judgment in any state where the defendant's property is found — provided that the defendant was afforded notice and a fair opportunity to mount a defense upon the original adjudication of the underlying claim "by a court of competent jurisdiction" (433 US at 210 n 36; see also Restatement [Third] of Foreign Relations Law § 481, Comment h ["The rationale behind wider jurisdiction in enforcement of [*9]judgments is that once a judgment has been rendered in a forum having jurisdiction, the prevailing party is entitled to have it satisfied out of the judgment debtor's assets wherever they may be located"]).[FN12]
The Daimler majority opinion cites Shaffer with approval four times and says nothing to cast doubt on the continuing vitality of the statement in Shaffer's footnote 36 preserving asset-based jurisdiction for proceedings to enforce foreign judgments. Therefore, given that Daimler addressed the constitutional requirements for personal jurisdiction to adjudicate a claim on its merits in the first instance, we do not read Daimler's contraction of general jurisdiction to entertain plenary actions to apply to proceedings, such as the present one under CPLR article 53, to recognize and enforce previously rendered foreign judgments (see Silberman & Simowitz, 91 NYU L Rev at 362 [noting that Shaffer's recognition of a "dichotomy" between the jurisdictional standards for plenary actions and those for recognition/enforcement actions "suggests that restrictions on general jurisdiction set forth in Goodyear and Daimler should not necessarily apply in the recognition and enforcement context"]; but see Sonera Holding B.V. v Cukurova Holding A.S., 750 F3d 221 [2d Cir 2014] [applying the Daimler general jurisdiction standard to an action for recognition of a foreign arbitral award], cert denied __ US __, 134 S Ct 2888 [2014]).[FN13]
Our conclusion that Daimler is not controlling, however, still leaves open the question of whether this proceeding may be maintained under the jurisdictional principles governing article 53 proceedings. As previously noted, in denying the motion to dismiss, Supreme Court was persuaded by ABA's argument that this Court's 2014 Abu Dhabi decision established that no jurisdictional predicate, whether in personam or in rem, is ever required for any proceeding seeking recognition and enforcement of a foreign country judgment under article 53. In our view, Abu Dhabi should not be read so broadly.
In Abu Dhabi, the plaintiff, a bank domiciled in the United Arab Emirates, sought to enforce a judgment of the English High Court of Justice against the defendant, a limited partnership domiciled in Saudi Arabia, under article 53. In opposing the plaintiff's motion for summary judgment in lieu of complaint, the defendant argued for dismissal of the action on the ground that the New York court lacked jurisdiction over the defendant or its property or, alternatively, on the ground that New York was an inconvenient forum. Critically, the Abu Dhabi defendant — unlike defendants here — did not raise any of the previously described statutory grounds for nonrecognition of a foreign country judgment set forth in CPLR 5304. As reflected in the record of Abu Dhabi, neither did the defendant in that case argue — as the instant [*10]defendants argue here — that the foreign judgment at issue failed to meet any of the prerequisites to enforcement under article 53, such as being "final, conclusive and enforceable where rendered" (CPLR 5302) or "granting or denying recovery of a sum of money" (CPLR 5301; see also CPLR 5303). It was in this particular context, where the defendant opposing recognition of the foreign judgment did not assert any of the statutory defenses to such recognition, that the Abu Dhabi court concluded that the foreign judgment could be recognized even if the defendant were not subject to personal jurisdiction in New York and had no assets in the state:
"In the present action, defendant has actual notice of the enforcement action and does not argue that the English judgment fails to meet the requirements of CPLR 5303 or that any grounds for nonrecognition of a foreign country money judgment exist. Nor does defendant provide a reason why the judgment should not be recognized as a matter of substance. Under these circumstances, a party seeking recognition in New York of a foreign money judgment . . . need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts" (117 AD3d at 611 [emphasis added and internal quotation marks omitted]).[FN14]
The Abu Dhabi holding applies only "under the[] circumstances" (id.) that were presented by that case, namely, where the defendant — unlike defendants in the case before us — does not contend that substantive grounds exist to deny recognition to the foreign judgment under article 53. The underlying premise of Abu Dhabi's holding that Supreme Court in that case had properly entered judgment under article 53, even if jurisdiction over the defendant's person or property had been lacking, was that the court had been merely "performing [a] ministerial function" (id. at 613) in according recognition to a foreign judgment of unquestioned finality, conclusiveness and validity under the standards of article 53. Thus, in Abu Dhabi, entertaining the recognition and enforcement proceeding in New York imposed "no hardship" on the defendant, since "there [was] nothing to defend" (id.), given that the defendant was not raising any substantive defenses to the recognition of the English judgment.[FN15]
Abu Dhabi, by its own terms, is not controlling where — as is the case here — the foreign [*11]judgment's entitlement to recognition under article 53 is placed in question. In that situation, there is something to defend, and the court's function ceases to be merely ministerial. In such a case — and the matter before us is such a case — the court will be required to determine contested questions of fact, of law, or of both, and, if nonmandatory grounds for nonrecognition of a judgment are raised, to exercise judicial discretion (see Byblos, 10 NY3d at 248 ["CPLR 5304(b) contains the discretionary grounds for refusing foreign court judgment recognition"])[FN16]. To require a defendant to litigate such substantive issues in a forum where it maintains no property, and where it has no contacts that would otherwise subject it to personal jurisdiction, would "offend [the] traditional notions of fair play and substantial justice" (International Shoe, 326 US at 316 [internal quotation marks omitted]) at the heart of the Due Process Clause. As the previously cited law review article explains:
"A judgment debtor has a number of defenses available to challenge the original judgment [under the Uniform Act, enacted in New York as Article 53] and should not be forced to raise those defenses in any forum in which the judgment creditor might choose to bring a recognition/enforcement action. The debtor should only be required to respond to an action for recognition or enforcement in a court where the debtor's property has some connection to the forum and it is fair to require him to respond there" (Silberman & Simowitz, 91 NYU L Rev at 354).[FN17]
To go beyond Abu Dhabi and hold, as ABA urges, that no jurisdictional nexus is ever required for a proceeding under article 53, even if the defendant asserts substantive defenses to recognition of the foreign judgment, would be a substantial departure from the prior general understanding of the law. For example, the Restatement (Third) of Foreign Relations Law takes the position that the creditor on a foreign country judgment "must establish a basis for the exercise of jurisdiction by the enforcing court over the judgment debtor or his property" (§ 481, Comment g). Similarly, the previously cited bar association opinion expressed the view that, under the Due Process Clause, "actions for the recognition and enforcement of foreign judgments under the Uniform [Act] require a basis for the exercise of jurisdiction" (City Bar Opinion, 15 Am Rev Intl Arb at 409)[FN18]. In the analogous context of suits for confirmation of foreign arbitral awards, the Second and Ninth Circuits held, even before Daimler, that due process required the court to have jurisdiction over the person or the property of the defendant (see Frontera, 582 F3d at 398; Glencore Grain Rotterdam B.V. v Shivnath Rai Harnarain Co., 284 F3d 1114, 1118, 1122 [9th Cir 2002]).
The views of the foregoing authorities are consonant with the Court of Appeals' statement that it is a "basic principle that a court must have jurisdiction in rem or in personam in order to enter a valid judgment of any kind" (Gager v White, 53 NY2d 475, 487 [1981] [internal quotation marks and brackets omitted], cert denied 454 US 1086 [1981]). That principle has particular salience where, as here, those being haled into an American court are foreign nationals. As the United States Supreme Court has observed, "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders" (Asahi Metal Indus. Co. v Superior Ct. of Cal., Solano County, 480 US 102, 114 [1987]).
In light of the foregoing considerations, and given that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere" (World-Wide Volkswagen Corp. v Woodson, 444 US 286, 291 [1980]), we decline to extend the holding of Abu Dhabi beyond the particular circumstances under which that case was decided [FN19]. Moreover, we do not believe that such an extension of Abu Dhabi's holding would be consistent with the decision itself, which expressly qualified its holding by stating that it applied "[u]nder these circumstances," referring to the absence of any "argu[ment] that the English judgment fails to meet the requirements of CPLR 5303 or that any grounds for nonrecognition of a foreign country money judgment exist" (117 AD3d at 611).
In this case, to reiterate, the circumstances under which Abu Dhabi was decided are plainly absent. Unlike the defendant in Abu Dhabi, the present defendants, as previously discussed, have attacked the Albanian judgment as failing to meet the prerequisites for recognition under article 53 of being for the "recovery of a sum of money" (CPLR 5301, 5303) and of being "enforceable where rendered" (CPLR 5302); as subject to one of the article's mandatory defenses to recognition (CPLR 5304[a][1]); and as subject to three of the article's discretionary defenses to recognition (CPLR 5304[b][4], [5], [6]). Moreover, while it would be inappropriate at this juncture to express a view as to whether any of these objections to recognition of the Albanian judgment are likely ultimately to prevail, it cannot be said, on this record, that all of them have been asserted frivolously [FN20]. Accordingly, to maintain this [*12]proceeding in New York, "[s]ome basis must be shown, whether arising from [defendants'] residence, [their] conduct, [their] consent, the location of [their] property or otherwise, to justify [their] being subject to the court's power" (Frontera, 582 F3d at 397 [internal quotation marks omitted]).
On this appeal, however, ABA does not claim that the existing record establishes an in personam or in rem jurisdictional predicate for this proceeding. Neither does ABA request, in case we are not persuaded by its argument that such a jurisdictional nexus is unnecessary, an opportunity to conduct jurisdictional discovery to demonstrate such a nexus. ABA has staked all on its position (which we have rejected) that Abu Dhabi is controlling and obviates the need for it to demonstrate that New York has jurisdiction over defendants or their property. Indeed, although its appellate brief points out that Enel has nonparty subsidiaries that operate in New York, and that Enel (directly or through subsidiaries) has obtained financing through the New York capital markets, ABA specifically disclaims any reliance on these facts, stating that such matters are "irrelevant to the legal question on appeal of whether personal jurisdiction over a judgment-debtor in New York is required in an Article 53 recognition action."[FN21] Moreover, the [*13]record does not identify any property of either Enel or Enelpower located within New York that could provide an in rem basis for maintaining this proceeding here, and — again — on appeal, ABA does not request jurisdictional discovery to locate any such assets [FN22]. Accordingly, because ABA does not claim to have demonstrated an in personam or in rem jurisdictional predicate for maintaining this proceeding in New York, and does not ask us for an opportunity to conduct discovery in aid of making such a demonstration, we conclude that defendants' motion to dismiss should be granted.
Finally, because we are granting the motion to dismiss based on New York's lack of jurisdiction over defendants or their property, we need not address defendants' argument that subject matter jurisdiction was also lacking under Business Corporation Law § 1314.
Accordingly, the order of Supreme Court, New York County (Paul Wooten, J.), entered October 22, 2014, which, insofar as appealed from, denied defendants' motion to dismiss plaintiff's motion for summary judgment in lieu of complaint for recognition and enforcement of a foreign country judgment pursuant to CPLR article 53, should be reversed, on the law, without costs, and the motion to dismiss granted. The Clerk is directed to enter judgment accordingly.
All concur.
Order, Supreme Court, New York County (Paul Wooten, J.), entered October 22, 2014, reversed, on the law, without costs, and the motion to dismiss granted. The Clerk is directed to enter judgment accordingly.
Opinion by Friedman, J.P. All concur.
Friedman, J.P., Andrias, Kapnick, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 8, 2018
CLERK



Footnotes

Footnote 1:Although not relevant to the merits of this appeal, ABA notes that, during the pendency of the Rome arbitration, BEG sought to disqualify the arbitrator appointed by Enelpower on the ground that he had undisclosed conflicts of interest. The arbitration panel thereafter issued the award, by a vote of 2-1, without ruling on the disqualification motion. In the subsequent judicial proceedings, the Italian courts rejected BEG's arguments that the arbitrator's alleged conflicts of interest warranted setting aside the award.

Footnote 2:The judgment's formula for determining damages for each year from 2005 through 2011, with the court's explanation (as translated in the record), is:
"Vn = (Q x Pn) + (Q x Pcn), where (n) is the corresponding year, V is the total revenue, collections from the sale of electricity, Q = the amount of energy that would be exported in 2005-2006-2007-2008-2009-2010-2011, which is equal to 371,000,000 KWh/Year, P is the price of electricity sale [sic] according to the market, Pc is the price of Green Certificates for the following years according to the definitions of MSE (Italian Electricity System Operator) S.p.A."

Footnote 3:ABA alleged that ,091,870 — a figure that does not appear in the Albanian judgment — was the total principal amount of damages thereunder, derived by adding the judgment's damages figure for 2004 to the amounts yielded by the formula for the years 2005 through 2011.

Footnote 4:It should be noted that the order neither granted nor denied ABA's motion for summary judgment in lieu of complaint, but set a future return date for that motion.

Footnote 5:The court also rejected defendants' arguments that they had not been validly served with process under the Hague Convention in this proceeding and that the proceeding should be dismissed on grounds of forum non conveniens. Since defendants do not raise these arguments on appeal, we have no occasion to consider them.

Footnote 6:Nonrecognition of a foreign country judgment is also mandatory if "the foreign court did not have personal jurisdiction over the defendant" (CPLR 5304[a][2]). However, defendants do not deny that the Albanian court had personal jurisdiction over them.

Footnote 7:The five remaining discretionary grounds for denying recognition to a foreign country judgment — which apparently are not at issue in this action — are: (1) "the foreign court did not have jurisdiction over the subject matter" (CPLR 5304[b][1]); (2) "the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend" (CPLR 5304[b][2]); (3) "the judgment was obtained by fraud" (CPLR 5304[b][3]); (4) "in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action" (CPLR 5304[b][7]); and (5) the judgment was for defamation, unless the law applied by the foreign court "provided at least as much protection for free speech and press in that case as would be provided by both the United States and New York constitutions" (CPLR 5304[b][8]).

Footnote 8:The Albanian judgment states only that the price figure to be used in the formula is "the price of electricity sale [sic] according to the market," without specifying which market, at which time, is to supply the figure. The parties advise that, in the proceedings in Supreme Court, the definition of the price of energy to be employed in the damages formula has been one of the issues they have litigated, through the submission of competing expert evidence. While ABA faults defendants for opening the battle of the experts on this issue, ABA does not point to any provision of the Albanian judgment defining the price figure to be used for a given year in terms of an objective referent that would preclude future disputes.

Footnote 9:We note, however, that the Albanian judgment does grant recovery of damages for 2004 in a sum certain (󌍉,188,500) and states that the "lawsuit tax" has been paid with respect to that portion of the recovery.

Footnote 10:By contrast, the other category of personal jurisdiction, known as "specific jurisdiction," exists where "the suit arises out of or relates to the defendant's contacts with the forum"
(Daimler, 134 S Ct at 755 [internal quotation marks and brackets omitted]). In this case, there is no contention that ABA's Albanian judgment is based on a claim that arises out of or relates to any New York contacts defendants might have.

Footnote 11:See also Koehler, 12 NY3d at 544 (Shaffer's footnote 36 "makes clear that the traditional in rem approach of . . . [judgment enforcement] proceedings — permitting judgments to be enforced against property wherever it may be located — is constitutionally acceptable") (Smith, J., dissenting); Restatement (Third) of Foreign Relations Law § 481, Comment h (1987) ("an action to enforce a judgment may usually be brought wherever property of the defendant is found, without any necessary connection between the underlying action and the property, or between the defendant and the forum").

Footnote 12:On this appeal, the parties present what are, in our view, competing misinterpretations of Shaffer's footnote 36. ABA asserts that, under Shaffer, a court without personal jurisdiction of the defendant may recognize and enforce a foreign judgment, even if the defendant does not own any property in the forum, because "the Supreme Court expressly stated that no jurisdiction was necessary at all." We find no such express statement in the Shaffer footnote, which merely approves enforcement of a foreign judgment "in a State where the defendant has property" (433 US at 210 n 36) and opines that, in such a situation, there would be no need for "jurisdiction to determine the existence of the debt as an original matter" (id.; see Frontera Resources Azerbaijan Corp. v State Oil Co. of the Azerbaijan Republic, 582 F3d 393, 398 [2d Cir 2009] [the Shaffer footnote "assumed that such a court would still have jurisdiction over the respondent's property," even if it lacked personal jurisdiction]; Restatement [Fourth] of Foreign Relations Law: Jurisdiction [Tent Draft No. 1] § 402, Reporter's Note 3 ["The better reading is that Shaffer's exception is limited to actions to enforce a judgment where the defendant has property in the enforcing jurisdiction"]). Defendants, on the other hand, read Shaffer's approval of judgment enforcement in any state "where the defendant has property" (433 US at 210 n 36) as limited to enforcement of sister-state judgments entitled to full faith and credit. We disagree. Although, as defendants point out, the Shaffer footnote immediately follows the statement that "[t]he Full Faith and Credit Clause . . . makes the valid in personam judgment of one State enforceable in all other States" (id. at 210), that statement was part of Shaffer's explanation of why quasi in rem jurisdiction to adjudicate claims unrelated to the defendant's property in the state, as it had existed up to that time, was not necessary to prevent "a debtor [from] avoid[ing] paying his obligations by removing his property to a State . . . [without] personal jurisdiction over him" (id.). While a foreign country judgment is, of course, subject to greater scrutiny in an action for enforcement and recognition than is a judgment of one state of the Union being enforced in another (compare CPLR article 53 with CPLR article 54), we believe that Shaffer's statement that there is "no unfairness" in allowing an action for recognition and enforcement "where the defendant has property" (433 US at 210 n 36) holds true for a judgment of either kind. Moreover, we agree with the view that the practical rationale recognized by Shaffer for allowing property-based jurisdiction for judgment enforcement — preventing a judgment debtor from avoiding the judgment "by the expedient of removing his assets to a place where he is not subject to an in personam suit" (id. at 210, quoting Restatement [Second] of Conflict of Law § 66, Comment a) — "should apply with equal force to foreign country awards and judgments" (International Commercial Disputes Committee of the Association of the Bar of the City of New York, Lack of Jurisdiction and Forum Non Conveniens as Defenses to the Enforcement of Foreign Arbitral Awards, 15 Am Rev Intl Arb 407, 418 [2006] [hereinafter, City Bar Opinion]).

Footnote 13:Sonera has been criticized for imposing a "standard . . . [that] will prevent recognition and enforcement of awards and judgments that would have been previously recognized in the United States, potentially undermining the effectiveness of cross-border recognition and enforcement on which transnational businesses, among others, rely" (Silberman & Simowitz, 91 NYU L Rev at 349-350).

Footnote 14:The Abu Dhabi court further concluded that the enforcement action could be maintained in New York even if the defendant maintained no property here (id. at 612).

Footnote 15:The precedent on which Abu Dhabi principally relied is similarly distinguishable from the instant case. In affirming a judgment recognizing an Ontario money judgment in Lenchyshyn v Pelko Elec. (281 AD2d 42 [4th Dept 2001]), the Fourth Department stated that "the judgment debtor need not be subject to personal jurisdiction in New York" in an Article 53 proceeding (id. at 43), and stated further that the proceeding could be maintained in the state "even if defendants do not presently have assets in New York" (id. at 50). However, the Lenchyshyn decision expressly notes that the defendants therein had not raised any of the grounds for nonrecognition of a foreign country judgment provided in CPLR 5304 (id. at 46-47) and that "plaintiffs sufficiently allege that defendants have assets in New York," including bank accounts in Buffalo (id. at 50).

Footnote 16:Given that CPLR 5304 contemplates that a court hearing an article 53 proceeding may be called upon to adjudicate disputed questions of law and fact and to exercise judicial discretion (as expressly recognized in Byblos, 10 NY3d at 248), the references in two Court of Appeals decisions to the court's "ministerial function" in such a proceeding (Galliano, 15 NY3d at 81 [internal quotation marks omitted]; CIBC, 100 NY2d at 222 [internal quotation marks omitted]) cannot be read to mean that the court's only function in such a proceeding is ministerial. Rather, the court's function under article 53 becomes ministerial once it is established that there are no grounds for declining to recognize the foreign judgment, either because such grounds are found lacking after being raised by the defendant (as occurred in both John Galliano and CIBC) or because the defendant does not raise any such grounds (as occurred in Abu Dhabi and Lenchyshyn).

Footnote 17:In criticizing a decision in which the Canadian Supreme Court held that no jurisdictional nexus between the defendant and the forum was required for recognition and enforcement of a foreign judgment (Chevron Corp. v Yaiguaje, [2015] 3 S.C.R. 69 [Can.]), the same article observes: "It is hardly accurate to say that no unfairness' could result from demanding that a judgment debtor with no connection of any kind to Ontario be haled from across the world into a court there and forced to assert its defenses there — or lose its ability to contest the conversion of a foreign judgment into a Canadian judgment. That the judgment debtor has no connection to the enforcing forum does not mean that the debtor has no reason to be troubled by the existence of an outstanding judgment rendered in that forum. If the judgment debtor chooses not to defend a recognition action where it has no assets, the existence of an outstanding judgment may have reverberations during the life of the judgment. [¶] The effect of a rule that permits recognition without a jurisdictional nexus is likely to encourage creditors to shop for the forum that offers the most lax standards for judgment recognition. The problem is compounded if other nations will grant recognition to such a judgment, or if other states within a federal system view the judgment as itself entitled to enforcement without defenses, as under the Full Faith and Credit Clause of the U.S. Constitution" (Silberman & Simowitz, 91 NYU L Rev at 355-356 [footnote omitted]). We note that there is conflicting authority from other states on the question of whether a New York judgment entered under article 53 without a jurisdictional nexus to New York is entitled to full faith and credit (compare Ahmad Hamad Al Gosaibi & Bros. Co. v Standard Chartered Bank, 98 A3d 998 [DC App 2014] [answering the question in the negative], with Standard Chartered Bank v Ahmad Hamad Al Gosaibi & Bros. Co., 99 A3d 936 [Pa Super 2014] [answering the question in the affirmative], appeal denied 108 A3d 36 [Pa 2015]).

Footnote 18:The same bar association opinion "disagree[d]" with Lenchyshyn, which it construed as holding that "an action for recognition [under article 53] may not be dismissed based on lack of jurisdiction of the court where recognition is sought" (15 Am Rev Intl Arb at 410 n 12). The previously cited law review article, based on its interpretation of Abu Dhabi and Lenchyshyn as "dispens[ing] with any jurisdictional requirement with respect to an action to enforce a foreign judgment," also characterized those cases as "a marked departure from the generally accepted approach that some jurisdictional basis was necessary to enforce . . . a foreign judgment" (Silberman & Simowitz, 91 NYU L Rev at 348 [emphasis omitted]).

Footnote 19:Because we believe that the Constitution requires, as a matter of due process, a jurisdictional nexus with New York as a prerequisite to maintenance in this state of an article 53 proceeding to recognize and enforce a foreign country judgment of contested validity, it is of no moment that article 53 does not expressly provide that lack of such a jurisdictional nexus constitutes a defense in such a proceeding. In the analogous context of a suit to confirm a foreign arbitral award under the applicable international convention, the Ninth Circuit observed that it was "not significant in the least that the legislation implementing the Convention lacks language requiring personal jurisdiction over the litigants" (Glencore, 284 F3d at 1121) because "due process requires that the district court have jurisdiction over the defendant against whom enforcement is sought or his property" (id. at 1122; accord Frontera, 582 F3d at 397-398).

Footnote 20:At a minimum, on the undeveloped factual record before us, defendants appear to have raised nonfrivolous objections to the Albanian judgment, warranting exploration through further proceedings, under CPLR 5304(a)(1) and 5304(b)(5) and (6). The objection under CPLR 5304(a)(1) is substantiated by the submitted State and Commerce Department reports describing the Albanian courts as subject to corruption and political pressure, although of course such conclusory statements would not ultimately suffice, standing alone, to deny the judgment recognition. The objection that the Albanian judgment "conflicts with another final and conclusive judgment" (CPLR 5304[b][5]) is supported, on its face, by the Italian judgment upholding the arbitration award dismissing BEG's claim, although ABA would be entitled to develop its contention that, in fact, the Italian and Albanian judgments are not in conflict because each involved different parties and different claims. Similarly, the arbitration clause of the BEG-Enelpower agreement appears, on its face, to support defendants' objection that the Albanian proceeding "was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court" (CPLR 5304[b][6]), although, again, ABA would be entitled to develop its claim that, under applicable law, the agreement did not bind it or did not cover its claim. In view of the foregoing, we need not consider whether defendants' remaining objections to recognition of the Albanian judgment are colorable. Nor need we consider defendant's further argument that, apart from the grounds for nonrecognition they assert, the proceeding seeks "new relief" (Galliano, 15 NY3d at 81 [internal quotation marks omitted]) that cannot be granted without jurisdiction over defendants or their property.

Footnote 21:With regard to Enel's subsidiaries that do business in New York, ABA makes no claim to have demonstrated that these subsidiaries are either alter egos of Enel, so as to warrant piercing the corporate veil, or that the subsidiaries act as agents of Enel in New York, so as to warrant imputing their conduct in New York to Enel. Nor, to reiterate, does ABA seek on this appeal an opportunity to conduct jurisdictional discovery in the hope of making such a demonstration.

Footnote 22:We note that, after the order appealed from was issued in October 2014, nonjurisdictional discovery went forward in Supreme Court for the purpose, among others, of locating assets of defendants in New York against which a judgment could be enforced. ABA's appellate brief, which is dated October 11, 2016, does not claim that any such property was uncovered in the intervening two years. In this regard, we note that, while defendants vigorously opposed the TRO against asset transfer that Supreme Court issued at the outset of this proceeding, the TRO encompassed any assets of Enel's subsidiaries within New York.